UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BADGER DAYLIGHTING CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-00912-TWP-TAB |
| ) | |
| SHANNON RUTHERFORD, ) | |
| ) | |
| Defendant. ) | |

**ORDER OVERRULING DEFENDANT'S RULE 72 OBJECTIONS AND GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS**

This matter is before the Court on Defendant Shannon Rutherford's ("Rutherford") Rule 72 Objections to the Magistrate Judge's Report and Recommendation Granting in Part Plaintiff Badger Daylighting Corporation's ("Badger") Motion to Compel and for Sanctions (Filing No. 98). For the following reasons, Defendant's objections are **overruled**. Accordingly, the Magistrate Judges Report and Recommendation (Filing No. 90) is **approved** and Badger's motion to compel and for sanctions (Filing No. 72) is **granted in part**.

### I. BACKGROUND

**A. Factual Background**

Badger is a Nevada corporation that designs, develops, tests, and manufactures vehicles and equipment for nondestructive excavation and related services. (Filing No. 1 ¶ 11). Rutherford previously worked for Badger as an Outside Sales Representative in Texas and Louisiana. *Id.* ¶¶ 15, 20. In that role, she gained access to information about Badger's clients, developed and maintained business relationships with those clients, and developed an intimate knowledge of Badger's proprietary information. *Id.* ¶ 16. As a condition of employment, Rutherford signed a Confidentiality, Non-Solicitation and Non-Competition Agreement (the "Agreement") barring her

from (1) disclosing trade secrets, (2) soliciting Badger employees or customers, and (3) performing similar services for a set period following her employment with Badger. (Filing No. 1-1).

On April 29, 2024, Rutherford resigned. (Filing No. 1 ¶ 15). Shortly thereafter, she began working for one of Badger's competitors, Precision Hydrovac Excavation ("Precision"). *Id.* ¶ 2. On May 1, 2024, Badger sent a letter to Rutherford reminding her of her obligations under the Agreement, though Badger did not then accuse Rutherford of wrongdoing. *Id.* ¶ 41; (Filing No. 1-3). On May 15, 2024, Badger, via counsel, sent a second letter accusing Rutherford of violating the Agreement after learning that Rutherford approached a Badger employee offering him work at Precision. (*See* Filing No. 1-4). Rutherford's counsel responded to the May 15 letter a week later denying Badger's claims. (Filing No. 1-5).

Before filing suit, Badger engaged a forensic examiner, Rebecca Green ("Green"), to examine Rutherford's Badger-issued computer (*see* Filing No. 1-2). The examination showed that in the months leading up to her last day with Badger, Rutherford connected an unauthorized USB device to her work computer; forwarded several work emails to her personal account; accessed certain client files; and accessed and saved certain proprietary reports at a higher rate than usual. *Id.*; (Filing No. 1 ¶ 36).

### B. Procedural Background

#### 1. Badger's Lawsuit and Initial Investigation

Badger initiated this action against Rutherford on May 30, 2024, asserting claims for breach of contract, breach of fiduciary duties, and misappropriation of trade secrets. (Filing No. 1). To facilitate an expedited discovery process, the Court ordered the parties to file an agreed electronically stored information protocol ("Joint ESI Protocol") that would permit Badger to inspect Rutherford's personal electronic devices. (*See* Filing No. 33). The protocol was approved

on July 15, 2024, requiring Rutherford to make her personal accounts and devices available for inspection by Badger and Green. (Filing No. 40).

Green's examination revealed a pattern of suspicious conduct by Rutherford. For example, a review of Rutherford's Badger-issued iPhone showed the phone was factory reset, without Badger's approval, the day after she resigned and before she returned this and other Badger-owned devices to Badger. (Filing No. 73-1 at 46 ¶ 166). She apparently followed a plan she had communicated to a coworker a year earlier, when she told the coworker to "reset [her] work phone back to factory settings so they can't go into your messages, emails, etc." *Id.* ¶ 167.

Green's examination also showed that Rutherford used her work laptop to access a personal Yahoo account before she resigned and deleted nearly 15,000 Yahoo messages. (Filing No. 73-1 at 47 ¶¶ 169–171). There were more than 20,000 unread messages in that account on April 12, 2024, but by June 5, 2024—after litigation formally commenced—the Yahoo account showed only 3,600 emails. *Id.* at 47–49 ¶¶ 171–174. Among the deleted emails was an April 23, 2024, email Rutherford forwarded to her Yahoo account with the subject line, "Fwd: Worley NDA & Pre-Qual (Badger Daylighting) NDA – Venture Global CP2" (the "Worley email"). *See id.* at 37 ¶ 137. The day after she forwarded the Worley email, Rutherford bragged to a coworker that she was "about to take all the Entergy work from [Badger]," and she sought advice about resetting her Microsoft account to factory settings before returning her work computer. *Id.* at 11 ¶ 33.

2. **Investigative Delays and Misconduct Allegations**

The investigation into Rutherford's misconduct hit several roadblocks. According to Green, Rutherford engaged in a pattern of delay and obstruction tactics which added significant time and expense to Badger's prosecution of the case. Green claimed that Rutherford and her counsel repeatedly provided incorrect login credentials for several accounts and blocked her initial

3

request for access to the Yahoo account. (Filing No. 73-1 at 23 ¶¶ 82–86; *Id.* at 49–50 ¶¶ 177–181). Rutherford's counsel attributed the incorrect credentials to typos on each occasion. *Id.* at 23 ¶ 84. Rutherford also failed to produce an iPhone 12 and USB device that were subject to the Joint ESI Protocol. *See id.* at 12 ¶¶ 36–40. Rutherford provided varying explanations for the failure to produce the iPhone 12, including that it was thrown away; it was traded in; it was lost at her home; among other excuses. *Id.* at 12 ¶ 36.

Green also alleged Rutherford withheld evidence from her own counsel. Several weeks after the Court approved the Joint ESI Protocol, Rutherford's former counsel informed Green that while reviewing the ESI batches, they discovered a screen shot of text messages between Rutherford and Precision's Managing Partner, Brent Mays, dated April 25, 2024. (Filing No. 73-1 at 51–52 ¶ 182). In it, Rutherford appears to float a potential new hire for Precision whom she knew had experience in the hydrovac industry and "would definitely be an asset." *Id.* at 52. According to Rutherford's former counsel, those messages were missing from Rutherford's then-current telephone and previously unknown to counsel. *Id.* at 51. On September 6, 2024, Rutherford's then-counsel moved to withdraw. (*See, e.g.*, Filing No. 52). The Court granted the motions, (*see, e.g.*, Filing No. 55), and Rutherford retained new counsel to proceed with the litigation (Filing No. 59).

### 3. Badger's Motion to Compel and for Sanctions

On October 10, 2024, the Magistrate Judge held a telephonic status conference to resolve the outstanding discovery issues. (*See* Filing No. 64). Rutherford was ordered to supplement her discovery responses by October 24, 2024, and Badger was granted leave to file a motion to compel if all issues were not resolved. *Id.* When Rutherford failed to comply with that order, Badger filed

4

a Motion to Compel and for Sanctions pursuant to Federal Rule of Civil Procedure 37(e)(2). (Filing No. 72).

In its Motion, Badger asserts that Rutherford (1) destroyed significant amounts of information stored on her personal devices and accounts that remain subject to discovery; (2) orchestrated a continuing pattern of delays to stall the forensic examination of her devices and accounts; and (3) failed to produce an Apple iPhone 12 and SanDisk USB device for inspection. *Id.* For these reasons, Badger requested sanctions in the form of (1) default judgment on all claims; (2) recovery for all costs and fees incurred in addressing the misconduct and preparing the Motion; and (3) if default judgment is not entered, an adverse inference in favor of Badger on all claims. *Id.* The Court referred the motion to the Magistrate Judge for a decision under Federal Rule of Civil Procedure 72.

The Magistrate Judge recommended that the Motion to Compel be granted in part, declining to enter default judgment but recommending that the Court draw a negative inference from Rutherford's discovery misconduct. (Filing No. 90). In his view, an adverse inference was an appropriate sanction because Rutherford intentionally destroyed 15,000 emails to prevent Badger from discovering her wrongdoing; engaged in a pattern of delay tactics designed to slow discovery; and failed to produce two devices that remain subject to the Joint ESI Protocol. Rutherford now objects to the Magistrate Judge's Report and Recommendation. (Filing No. 98).

## II.   LEGAL STANDARDS

A district court may refer for decision a non-dispositive pretrial motion to a magistrate judge under Federal Rule of Civil Procedure 72(a). Rule 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after

being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

After reviewing objections to a magistrate judge's order, the district court will modify or set aside the order only if it is clearly erroneous or contrary to law. The clear error standard is highly differential, permitting reversal of the magistrate judge's ruling only when "the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong," and the court will not modify a magistrate judge's non-dispositive, pretrial decision "simply because [it has] doubts about its wisdom or think[s] [it] would have reached a different result." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Coley v. Landrum*, No. 14-cv-956, 2016 WL 427518, at *1 (S.D. Ind. Feb. 4, 2016) (citation and quotation marks omitted).

### III. DISCUSSION

Rutherford objects to the Magistrate Judge's Report and Recommendation on two primary grounds. First, she argues the decision is contrary to law because the Magistrate Judge imposed the sanction without a ruling on whether the Court has personal jurisdiction over her. (Filing No. 98 at 2–3). Second, she contends the decision is clearly erroneous because the Magistrate Judge's conclusions were not supported by the facts. *Id.* at 3. The Court will take each objection in turn.

#### A. Contrary to Law

Rutherford first objects to the Magistrate Judge's authority to issue sanctions because, at the time of the Magistrate Judge's decision, the district court had not yet ruled on Rutherford's Motion to Dismiss for lack of personal jurisdiction. She contends that because the Motion to

6

Dismiss remained pending, the sanctions recommendation was premature and contrary to law. (Filing No. 98 at 3). Badger responds that Rutherford's personal jurisdiction defense is waived insofar as she seeks to prevent the Magistrate Judge from imposing an adverse judgment. (Filing No. 102-1 at 5–6).

Rutherford's argument is unpersuasive. Personal jurisdiction is determined at the time of the filing of the complaint, and challenging an action on those grounds does not divest the Court of such jurisdiction. *See Villalobos v. Casteñeda*, No. 12 C 8218, 2013 WL 5433795, at *6 n.8 (N.D. Ill. Sept. 27, 2013) (citing *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006)). As the Court concluded in its order denying the Motion to Dismiss, Rutherford consented to personal jurisdiction via valid forum selection clause in the Agreement. (*see* Filing No. 108). Therefore, the Magistrate Judge properly exercised personal jurisdiction over Rutherford in ruling on the Motion to Compel and for Sanctions.

Rutherford's reliance on an out-of-circuit case, *Funk v. Belneftekhim*, 861 F.3d 354 (2d Cir. 2017), is not persuasive. There, the Second Circuit held the district court abused its discretion by striking the defendants' jurisdictional defense in its entirety as a sanction for their refusal to comply with discovery orders. *Id.* at 370. In that court's view, denying the defendants' subject-matter-jurisdiction defense "risked [the] district court's exercise of jurisdiction where none may exist." *Id.*

Not so here. The Magistrate Judge's decision did not resolve Rutherford's personal jurisdiction defense on the merits, nor did it deprive the district court of the opportunity to do so. To the contrary, the Court considered and rejected Rutherford's personal jurisdiction argument in a subsequent order denying the defendant's Motion to Dismiss (*see* Filing No. 108). Therefore,

the Magistrate Judge's decision was not contrary to law and Rutherford's first objection is **overruled**.

### B. Clear Error

Next, Rutherford argues sanctions were not warranted under Rule 37(e)(2) because the Magistrate Judge clearly erred in finding she intentionally destroyed evidence, engaged in a pattern of delays, and failed to produce certain devices. For the reasons explained below, Rutherford's arguments fall short.

#### 1. Destruction of Evidence

The Court may issue sanctions under Rule 37(e) "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If the Court finds the party "acted with intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party" responsible for its loss or "instruct the jury that it may or must presume the information was unfavorable to" that party. Fed. R. Civ. P. 37(e)(2).

A spoliation sanction is "proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Even if a party destroys evidence in violation of a duty to preserve it, the court may only presume it was unfavorable to a party if the party acted in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) ("Nevertheless, his opponent did not show bad faith ... so no adverse inference instruction could issue."). "A party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" *Id.* (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008)). "If, being sensitive to the possibility of a suit,

a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence." *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 272 (7th Cir. 1993).

The Magistrate Judge first found an adverse inference was appropriate because Rutherford intentionally destroyed nearly 15,000 emails from her personal Yahoo email account for the purpose of hiding adverse information. (Filing No. 90 at 4–10). Rutherford's deletion of the Worley email was particularly telling because Worley was a significant customer of Badger's and Rutherford admitted to deleting it on purpose. *Id.* The Magistrate Judge reasoned that because there was no way of recovering the emails, the only reasonable inference is that she deliberately destroyed the remaining 15,000 emails. *Id.* The Magistrate Judge also relied on evidence that Rutherford had destroyed evidence before; namely, that she reset her Badger-issued iPhone and withheld the Mays text messages from her former counsel. *Id.* At bottom, her mass deletions and obstructions made it impossible to discern the full context of the destroyed evidence. *Id.*

Rutherford contends these conclusions were clearly erroneous because the Worley email was forwarded by mistake and deleted prior to litigation. (Filing No. 98 at 5). Accordingly, it was unreasonable to conclude that the remaining deleted emails contained evidence of wrongdoing. *Id.* In addition, Rutherford argues the Mays text messages were eventually produced, so sanctions on the basis of those deleted messages was improper. *Id.* at 11. Finally, she contends that litigation was not contemplated when she reset her Badger iPhone, and the information sought therefrom has since been recovered. *Id.* at 11–12.

Like the Magistrate Judge, this Court is not convinced. As a threshold matter, Rutherford knew or should have known litigation was imminent when she destroyed the evidence. Recall that Rutherford began her alleged solicitation scheme in April 2024 when, before she resigned, she

9

reset her Badger iPhone, bragged to a coworker about stealing Badger clients, and attempted to solicit a Badger employee for Precision. Then, in May 2024, she received two warnings from Badger signaling its awareness of her potential violations of the Agreement. Rutherford should have known at the outset that Badger could—and indeed, did—learn of her alleged wrongdoing. Therefore, Rutherford had a duty to preserve evidence when she reset the Badger iPhone and when she deleted the emails. Her contention that she performed the mass deletion before the lawsuit was initiated is irrelevant.

Furthermore, the Magistrate Judge did not clearly err in concluding Rutherford destroyed the evidence in bad faith. As the Magistrate Judge found, Rutherford's claim that the 15,000 non-Worley emails were junk or spam is self-serving and unimpeachable. Per Green's sworn statement, it is impossible to recover the deleted emails, so no one other than Rutherford herself can confirm the truth of how the emails were lost or what was contained in them. Even if further discovery reveals Rutherford forwarded other Badger emails, that will only serve to bolster Badger's claims of misconduct. Moreover, her nefarious intentions are evident in her attempts to reset her Badger iPhone and Microsoft accounts, render undiscoverable the Mays text messages, and prevent Green from accessing her Yahoo account when she attempted to log in. As Badger explains in its response, the documents Rutherford withheld or destroyed are patently unfavorable to her, and her explanations for why they were missing were inconsistent and unpersuasive. Accordingly, the Magistrate Judge did not clearly err in imposing sanctions for Rutherford's intentional destruction of evidence.

2. **Pattern of Delay**

Second, the Magistrate Judge concluded sanctions were warranted because the evidence showed Rutherford engaged in a pattern of delay tactics. (Filing No. 90 at 10). The Magistrate

Judge identified four specific instances of Rutherford's intentional delays: (1) a four-month delay in disclosing a personal Google account as required by the Joint ESI Protocol; (2) a one-month delay in providing two Samsung phones for examination; (3) a three-week delay in providing accurate log-in information for certain accounts; and (4) a three-month delay in providing accurate log-in information for a newly-discovered iCloud account and associated iPhone 12 device. *Id.* at 10–12. The Magistrate Judge acknowledged that while not dispositive on their own, when combined with Rutherford's evolving explanations for the delays and other alleged misdeeds, the pattern of delays justified the sanction here. *Id.* at 12.

Rutherford contends these findings were clearly erroneous, but the Court disagrees. Though delays alone may not justify the sanction, there is no clear error in the Magistrate Judge's decision finding Rutherford's changing story and numerous manufactured delays warranted an adverse inference. The Magistrate Judge identified several examples of Rutherford or her counsel withholding information from Green and forging excuses for their failure to comply with the Court's orders. For example, in August 2024, Rutherford's former counsel informed Green that Rutherford did not recognize the Google account recovered from Green's forensic examination despite Rutherford having recovered the account in June 2024 and actively using it in the months that followed. (*See* Filing No. 73-1 at 19–20, ¶¶ 70–74). Additionally, Rutherford's new counsel provided incorrect login information for Rutherford's accounts on several occasions, and his explanation was incredible given the timing and repeated nature of the alleged "typos." *See id.* at 23, ¶¶ 82–85. The Magistrate Judge appropriately relied on these and other fabrications and delays as grounds for the sanctions imposed.

11

### 3. Failure to Produce Devices

Finally, the Magistrate Judge concluded that Rutherford failed to produce for inspection an iPhone 12 she used while at Badger and a SanDisk USB device she inserted into her Badger laptop. *Id.* at 12–14.  Because Rutherford has, to date, failed to produce these devices, the Magistrate Judge found Rutherford out of compliance with the Court's orders and recommended sanctions as a result.

Rutherford admits she has not been able to provide either device to Badger or Green but insists neither are currently in her possession.  In her view, the sanction on this ground is impermissible because Badger failed to show the laptop into which the USB was inserted was ever in her possession, and she took reasonable steps to preserve the iPhone 12 iCloud data, which has been produced in compliance with the Joint ESI Protocol.  (Filing No. 98 at 14).  Conversely, Badger argues that Rutherford is the only person who could have inserted the USB into her laptop, and the iCloud data linked to the iPhone 12 was insufficient to satisfy her obligation under the Joint ESI Protocol.  (Filing No. 102-1 at 15).

The Court agrees with Badger.  It's true that Rutherford cannot be forced to produce devices she does not have, but her explanations, once again, strain credulity.  She provides no support for the claim that someone *else* had access to her Badger laptop at the time the USB was inserted, nor that this unidentified individual used the USB to obtain information about Badger to solicit its customers.  As for the iPhone 12, the Magistrate Judge was well within his discretion to impose the sanction despite Rutherford's production of a related iCloud account because Green's investigation suggested that the account did not contain all the information stored on the iPhone itself.  That Rutherford may still be able to produce the phone is irrelevant; the deadline to produce her devices for inspection was over one year ago and she has had plenty of time to locate it.

12

## IV. CONCLUSION

For the reasons explained above, Defendant's Rule 72 Objections to the Magistrate Judge's Report and Recommendation (Filing No. 98) are **OVERRULED.** The Magistrate Judge's Report and Recommendation (Filing No. 90) is **APPROVED.** Badger's Motion to Compel and for Sanctions (Filing No. 72) is **GRANTED in part** such that the Court draws a negative inference from Rutherford's spoliation of evidence, intentional destruction and delay, and failure to produce all devices. Should this case proceed to trial, the jury shall be instructed to infer that the emails Rutherford deleted and the devices she failed to produce contained information that would have been adverse to Rutherford's position. In addition, Rutherford shall pay for Badger's reasonable costs and fees because of her misconduct.

**SO ORDERED**.

Date: 8/11/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Adam Arceneaux
Ice Miller LLP
adam.arceneaux@icemiller.com

Abby DeMare
Ice Miller LLP
abby.demare@icemiller.com

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Taylor Jon Ferguson
Biesecker Dutkanych & Macer, LLC
tferguson@bdlegal.com

Sarah Humble
Lewis Roca Rothgerber Christie LLP
shumble@lewisroca.com

Laura Pasqualone
Lewis Roca Rothgerber Christie LLP
lpasqualone@lewisroca.com

Mary Ellen Simonson
Lewis Roca Rothgerber Christie LLP
msimonson@lewisroca.com

Heather Stanton
Rose Law Group pc
hstanton@roselawgroup.com